Terwilliger *v.* Wands.

[MONROE SPECIAL TERM, July 14, 1857. *E. Darwin Smith*, Justice.]

———•-o-•———

## TERWILLIGER *vs.* WANDS.

In an action brought for speaking words not actionable of themselves, the plaintiff alleging by way of special damage, that in consequence of the speaking of the words, he had become sick and disabled and unable to attend to his business, he is bound to prove that the special damage alleged was exclusively the consequence of the words spoken by the defendant; and that it was the natural and immediate consequence of the speaking of the words.

If it appears, from the evidence, that the defendant did not, by the speaking of the words charged, solely, cause the special damage complained of, but that the same was produced by reports circulated by others, as well as by the charges of the defendant, the plaintiff should be nonsuited.

THIS action was for the speaking of words not actionable of themselves, by the defendant, concerning the plaintiff; the plaintiff alleging, by way of special damage, that in consequence of the speaking of the words, he had suffered great pain of body and mind, and had been greatly injured in his standing and reputation in the church in which he was an elder, and his private character and credit had been and was materially injured and impaired, and that he became sick and disabled, and unable to attend to his business. The cause was

tried at the Onondagà circuit, before Justice PRATT and a jury, in October, 1854. Upon the trial, evidence was given of the speaking of the words by the defendant, to one L. F. Wands, in the early part of June, 1852, to another person in May, 1852, the latter of whom communicated the fact to the plaintiff, in May, 1852; and in June, 1852, the same person told the plaintiff what L. F. Wands reported the defendant to have said, and the witness testified, "He (the plaintiff) felt dreadful bad, threw down his hoe and left the field. He had always worked with me, (the witness;) had been in middling good health before this; that after this the plaintiff appeared melancholy and looked bad; looked pale and sick; appetite was poor, and had to hire more help." A daughter of the plaintiff gave evidence that she heard the story the first of May, and also remembered when the plaintiff left the corn field, and of his going into the house and going to bed, and she remarked a great difference in his appearance, and his not sleeping at night; he did not pursue his work as formerly; the debility commenced in June; she heard of Mr. Wands' report in May or June, and first heard of its coming through L. F. Wands, in June, about the middle of hoeing time, and then remarked a difference; and he grew worse all through the summer. On cross-examination she testified that she heard some slight reports through the winter of 1852, and had frequent conversations with the plaintiff about them. The charges were made by Fuller, through the winter and summer, and she talked with the plaintiff about what Fuller had said. A lady told the witness, in May, of the story, and she told the plaintiff in June. A physician testified that he visited the plaintiff, professionally, in May or June, 1852, and examined him and found that he was much debilitated with what appeared to be a mental difficulty; and judging from what his friends said, he thought that his health was impaired so that he could not labor upon his farm; that the plaintiff was out of health through the summer. A son of the plaintiff testified that his health began to fail about the first of May, 1852, and became worse after that time, and during the summer was entirely prostrated. That he appeared like a person run down by

Terwilliger *v.* Wands.

sickness, in May, June and July. At the close of the evidence, the defendant moved for a nonsuit, upon two grounds, 1st. That the words were not spoken by the defendant to the plaintiff, nor authorized by him to be communicated to the plaintiff; and 2d. That there was no evidence that the damages, if any were proved, were occasioned by the speaking of the words by the defendant. The court granted the motion, and the plaintiff excepted and appealed from the judgment entered upon the nonsuit. The case was submitted upon printed points and briefs, by

*James Noxon,* for the appellant, and

*L. R. Morgan,* for the respondent.

*By the Court,* W. F. ALLEN, J. It is probably too late for this court to question the soundness of the rule which authorizes an action for defamation of character by words not actionable in themselves, upon averring and proving that the bodily health of the party was so affected by the charges made as to incapacitate him from attending to his ordinary pursuits and business.

As slanderous words are supposed injuriously to affect the character and standing of the party defamed, in the estimation of his fellow men who are ignorant of the truth or falsity of the charge, and therefore liable to be prejudiced by them, and the action is given to compensate for this supposed injury, and to reinstate the party in the good opinion of his neighbors, it would be entirely consistent with the theory of the action to confine it, when brought for words not *per se* actionable, to cases in which third persons have, by reason of thus speaking, been so influenced that the party had been directly subjected to some pecuniary loss; as when by reason of a charge of dishonesty or insolvency, he has been denied credit, or lost some employment; or a female has, by reason of some charge affecting her character as a woman, lost the opportunity of a suitable marriage. The damage in such case is legitimate, direct

and immediate. The party defamed has lost character and reputation with his neighbors; and as the immediate and natural consequence of such injured reputation, has sustained a pecuniary loss. The effect can be readily traced to the cause, and the connection between them is palpable. But a loss of health, in cases like the one before us, may ensue when the reputation of the party has not suffered in the least; when his character and standing are as good in the community as they ever were, and as good as that of him against whom the first evil word has not been spoken; the loss of health arising from an undue sensitiveness, a fear or an indefinable dread of a possible tarnish to his fair fame; or possibly from a shrinking from any and every thing which will give him notoriety and make him the subject of public remark, either for good or evil. The injured health may exist while the reputation is untarnished, or vice versa; and while in the class of cases which I have supposed to be the appropriate cases for actions of slander for words not actionable, two things must concur, to wit: 1st. The words must be spoken; and 2d. The reputation of the party must suffer by the credit given to the words by some third person, and to which the pecuniary loss can be directly traced. In cases like this the loss may occur, and that which the law, by giving an action upon the case for defamation, seeks to protect, to wit, the character and the reputation of the party, be uninjured. In a proper case, the legal damage is the consequence of the injury to the reputation. In this class of cases it may be, and very frequently is, the fear of an injury, and a bill *quia timet* would be a very appropriate remedy. The case of *Bradt* v. *Towsley*, (13 *Wend.* 254,) is the first action of the kind in our own courts, and the first in any court, that has come under my notice, and the question arose upon demurrer to the declaration. The action was by an unmarried female, charged with a want of chastity; and she averred that by reason of the speaking of the words she became dejected in mind and enfeebled in body, so as to be prevented from attending to her ordinary business, and the averment was held to be sufficient. A libelous letter addressed to the party libeled is not actionable, because there is no pub-

lication, and of course no injury to the reputation. (*Lyle* v. *Clason,* 1 *Cai. Rep.* 581.) But yet it may well be, that it would affect the mind and body of the person to whom it was addressed; especially if he had reason to believe it was the intention of the writer to give the libel publicity; and if this result should follow, I do not see any reason, upon the principle of *Bradt* v. *Towsley,* why an action should not be given. The court, in *Lyle* v. *Clason,* say, "The basis of the action is damages for the injury to character *in the opinion of others.*" The rule of damages founded upon injury to the health of the party slandered, and consequent loss in business, is in practice unsatisfactory in its application, in more respects than one. The effect of slanderous charges upon the individual against whom they are uttered, depends so much upon the constitution, temperament, present health and the bodily and mental vigor of the party, that a satisfactory result may be very difficult to attain in ordinary cases.

We know, that while words imputing incontinence to a chaste and sensitive female might well be supposed to affect her spirits and her bodily comfort and health, for a time ; and defamatory words might affect some men in a similar manner ; other men, differently constituted, would not be at all disturbed in body or mind by like charges ; and while one class of persons might take to their beds upon the occasion of an attack upon their reputation, others would be far more likely to be tempted to commit an assault and battery. It follows, that whether an action can be maintained may depend more upon the physical and mental constitution of the plaintiff, than upon any other cause. But taking the law as we find it in *Bradt* v. *Towsley,* and the two or three other cases which have succeeded it, and in which the principle there laid down has been to a greater or less extent followed, I am of the opinion that the cause was properly disposed of at the circuit. The words not being actionable of themselves, it was incumbent upon the plaintiff to prove that the special damage alleged in his complaint, to wit, the loss of his health and his consequent inability to attend to his business, was exclusively the consequence of the words

spoken by the defendant; (*Hallock* v. *Miller*, 2 *Barb.* 630 ;) and they must be the natural and immediate consequence of the speaking of the words. · (*Beach* v. *Ranney*, 2 *Hill*, 314. *Kean* v. *Wilcocks*, 8 *East*, 3.   *Keenholts* v. *Becker*, 3 *Denio*, 346.) To this extent, *Ward* v. *Weeks*, (7 *Bing.* 211,) would be recognized and followed without hesitation.   The proper application of the rule in that case would admit ·of more question. (*See also, Hastings* v. *Palmer*, 20 *Wend.* 225 ; *Olmsted* v. *Brown*, 12 *Barb.* 657.)

There are two difficulties, within the principle of these decisions, in the way of the plaintiff's recovery in this action : 1st. The want of proof that the words spoken by the defendant contributed to the effect alleged as the special damage ; and 2dly. The entire absence of evidence that such speaking was the sole or even the principal cause of the alleged pecuniary loss.

The first evidence of the speaking the words by the defendant was in the beginning of May, to one Neifer, who testifies that "in May he communicated to the plaintiff what the defendant had told him."   It does not appear that any effect resulted from this communication, as the witness testifies that the plaintiff continued to work, and was in middling good health until the 7th of June, when he " felt dreadful bad, threw down his hoe and left the field," on being told what another person said the defendant told him.   His daughter testified that his debility commenced in June, and the physician was called in May or June, undoubtedly after the conversation in June.   It is true, a son of the plaintiff, who was at home once in three weeks, says he thinks his father's health began to decline about the first of May ; and if so, it was before the words were spoken by the defendant.   This being the only evidence of any connection between the alleged slander and the ill health of the plaintiff, I think it entirely insufficient to establish the relation of cause and effect between them.   The sickness did not follow immediately upon the heel of the information that the defendant had made these charges, but after an interval of seven weeks ; and the fact that he became ill about the time he heard

a second time of the charges made by the defendant is not satisfactory evidence, under the circumstances, that the illness was caused by the report.

2dly. Still less is there evidence that the sickness of the plaintiff was caused exclusively by the defamatory reports put in circulation by the defendant.

Assuming that the reports which were in circulation did prey upon his mind, and affect his bodily health, then the reports of the same general character which were put in circulation by Fuller and others, and which came to the knowledge of the plaintiff from various sources, in the winter and spring of 1852, must necessarily be presumed to have contributed to the alleged effect. The only conclusion would be, that it was not the words spoken by the defendant, or any other single individual, that caused the sickness, but that it was caused by all combined, and by the general "speech of people." By the plaintiff's own showing the defendant did not, by the speaking of the words charged, solely, cause the special damage complained of; and for this reason, if for no other, the nonsuit was properly granted.

The judgment must be affirmed.

[ONONDAGA GENERAL TERM, October 1, 1855. *W. F. Allen, Hubbard, Pratt* and *Bacon,* Justices.]